## No. 11,905.

### ELIZABETH O. EMKE VS. SUSAN McDONALD ET AL.

There is no legal presumption of indebtedness of a certain sum raised against a tutor in favor of his ward, on the clerk's certified abstract of inventory of the latter's property being duly registered in the mortgage office, which is sufficiently cogent to justify a court of justice to base a judgment upon in a partition suit amongst the heirs.

At most it is the commencement of proof.

APPEAL from the Civil District Court for the Parish of Orleans, *Monroe, J.*

*J. Timony* for Plaintiff, Appellant.

*Buck, Walsh & Buck* for Miss Annie Pringle, Defendant, Appellee.

Argued and submitted March 13, 1896.
Opinion handed down April 6, 1896.

The opinion of the court was delivered by

WATKINS, J. The proceeds marshaled for distribution among the parties to this suit were realized from the partition sale of real estate belonging to their deceased mother, and the judgment appealed from relates thereto.

The facts appearing in the transcript necessary to be considered are the following, viz.:

Mary Ellen Hall was first married to Warren McDonald, who died in New Orleans in November, 1871, leaving, as the issue of that marriage, two minor children, viz.: Elizabeth, the plaintiff, and Susan, one of the defendants in this suit.

His succession was never administered, and the only property of which he died possessed appears to have been a small store, which was kept by his widow subsequent to his death.

Mary Ellen Hall (Widow McDonald) was married again to William Pringle, in New Orleans, in 1872, who died in August, 1874, leaving as the issue of that marriage one minor child, viz.: Annie Pringle, another of the defendants in this suit.

The surviving widow of the two marriages caused an inventory to be taken of property, which consisted chiefly of the contents of a store, notes and accounts, furniture, etc., which were appraised at five thousand two hundred and eighty dollars and fifty-seven cents; and she caused an abstract of same to be inscribed in the mortgage office and qualified as natural tutrix.

There was no formal administration of the succession of William Pringle, and the proof shows that the widow and tutrix took charge of the store immediately after his death and thereafter operated and managed it.

On January 20, 1875, the Widow Pringle bought a piece of real estate on Gasquet street, which she sold in June following to Susanna Price; but same was retroceded to her in January, 1877. This property was occupied by the widow and children afterward and she added certain improvements; and that is the property the proceeds of which are now proposed for distribution.

Mrs. Widow Pringle died on the 25th of May, 1881, leaving as her survivors her three children, aged, respectively, eight, eleven and fifteen years; but there appears to have been no administration of her estate or inventory taken of her property. There is no evidence as to what became of any personal effects she may have

owned at the time of her death, and no trace is left of the store or of its contents—all the proof seeming to have been directed to the charges for taxes, repairs and insurance on the real estate alone.

In September, 1894 Elizabeth McDonald, now the wife of Otto Emke, filed a suit for a partition of the real estate by licitation, and, alleging her two sisters to be co-owners, she made them defendants.

There was judgment recognizing the three sisters to be the heirs of their deceased mother, and as the joint and equal owners of the property in indivision, and ordering a sale for the purposes of partition and settlement between them; and the sale having been made, the sum of two thousand three hundred and fifty dollars in cash was realized.

Less charges and costs, this sum is proposed for distribution, and the respective contention of the parties may be summed up as follows, viz.:

1. That of the McDonald children is, that Annie Pringle should collate about two thousand dollars which she has received and used; and that said sum should be added to the active mass for division.

2. That of Annie Pringle is a denial of any legal responsibility for the rents and uses of the property; and that the property was charged with a legal mortgage against the deceased mother, resulting from the registry of the abstract of the inventory of the Pringle community, which secured her interest therein of one-half, amounting to the sum of two thousand six hundred and forty dollars and twenty cents—an amount in excess of the total proceeds, and that she is entitled to have the same applied thereto by preference.

There is in the record no evidence of any indebtedness on the part of the deceased to Annie Pringle on the score of her hereditary claim, as the heir of her father, than what appears in the foregoing *resumé*, and the judge *aquo* seems to have rested his conclusions and decree sustaining same upon the presumptions of law that he drew therefrom.

Consequently, it is to this point that our attention will be first directed.

The law requires that an abstract of the inventory of a minor's property must be inscribed in the mortgage book of the parish where the tutor resides; (R. C. C. 331), and it is declared that the recording thereof " shall operate as a legal mortgage in favor of the minor for the *amount* therein stated," etc.   R. C. C. 323.

But the amount thus left in the hands of the tutor is subject to the use and enjoyment of the minor, under the restrictions imposed by the law, and settlements made from time to time as required by law. R. C. C. 356.

Consequently, while the registry of an abstract of inventory operates as a mortgage security for the tutor's indebtedness to the minor (R. C. C. 3280), for the amount therein stated (R. C. C. 323), yet it may be extinguished "by the extinction of the debt for which the mortgage was given." R. C. C. 3411.

It was held in Ritter vs. Succession of Faessel, 34 An. 416, that, as nothing in the record discloses the *amount* of the indebtedness of the tutor to his ward, an order of seizure and sale to enforce a substistuted special mortgage in favor of the minor must be set aside; because a special mortgage given by the tutor " does not import a confession of judgment for any specific amount."

In Succession of Theurer, 38 An. 510, this court said that " it would do violence to the spirit as well as the letter of the enactments providing for the recording of abstracts of inventories in the interest of minors to hold that they were conclusive of the sum due.   *   *   * The Legislature, therefore, has, *ex industria*, declared that the recording of any instrument of this kind shall in no manner be evidence of the validity of the debt or claim." R. S., Sec. 2365.

Reference to that section confirms that statement.

It is evident that we should violate the positive mandate of the Legislature if we were to accept the recitals of the inventory as affording evidence of the validity of the tutor's indebtedness to his ward, and rest our judgment upon it.

It fully appears from the statement of the facts above related that there was adduced in evidence in the court *a qua* no other proof of the indebtedness of Mary Ellen Wall, deceased, to Annie Pringle on account of her hereditary claims in the succession of her father, William Pringle, deceased.

His succession was opened by his death in August, 1874, when Annie Pringle was only an infant, and Mrs. Pringle died in May, 1881, some years having intervened, during which she had exclusively the care and expense of the minor. During her lifetime she filed no account of her receipts or disbursements; and no receipts or vouchers have been produced disclosing her expenditures.

But there are, to our minds, some facts which are disclosed by the

statement furnished which have a bearing and should be taken into consideration in deciding the issues before us.

They are the following, viz.:

1. When Warren McDonald died in 1871, there was no administration of his succession, and no inventory taken of his property; though it is stated that, at the time of his death, he owned a small store, the value of which is not given.

2. That subsequent to his death, Mary Ellen Wall, his surviving widow, took charge of this store and managed and operated it.

3. That when she was married to William Pringle in the following year, he brought nothing into the marriage of which the testimony furnishes any account; but when he died in 1874, an inventory was taken which showed property which was appraised at five thousand two hundred and eighty dollars and fifty-seven cents, consisting chiefly of a store and its avails.

4. That of this property Mrs. Pringle took charge, after her husband's death; and on the 20th of January, 1875, within less than one year after her husband's death, she acquired the piece of real estate that constitutes the basis of this controversy, and which realized the sum of twenty-three hundred and fifty dollars in cash at the partition sale.

5. Subsequent to this investment there is no trace left of the little store, or of the notes, accounts, or other avails thereof.

Are we to assume, under this state of facts, that there was community property accumulated by William Pringle and wife, aggregating in value five thousand two hundred and eighty dollars and fifty-seven cents, in the short interval of time which elapsed between the date of their marriage in 1872 and that of his death in 1874?

Are we not rather to assume that the property of the first community between McDonald and his wife was employed by Mrs. Pringle to make the acquisition of the realty *after* the death of her second husband; and that, being thus invested, the hereditary claims of Annie Pringle become thereby absorbed?

We are inclined to that opinion.

A thorough consideration of this case, in all of its bearings, has satisfied our minds that the demand of Annie Pringle is not substantiated by the proof and should be rejected and disallowed as of nonsuit.

We do not find in the record sufficient proof on the question of rents and revenues to justify a judgment commanding Annie Pringle to make a collation, or render an accounting of same necessary in order to effect a partition between the heirs.

At most, the registry of the abstract of inventory can amount to the commencement of proof of indebtedness of the tutrix to her ward; consequently, our conclusion on the whole is to remand the case *ex proprio motu* so that all parties may have additional opportunity of substantiating their respective claims to the funds proposed for partition.

It is therefore ordered and decreed that the judgment appealed from be annulled and set aside; and it is now ordered and decreed that the cause be remanded and reinstated in the court *a qua* to await further proceedings according to law, appellee to pay costs of appeal, and those of the lower court to await final action therein.